```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
```

ANTHONY DEVINE HARRIS          :

V.                             :      CASE No. 3:09-cv-941(RNC)

UNITED STATES                  :


                         RULING AND ORDER

Anthony Devine Harris, a federal inmate proceeding pro se, moves pursuant to 28 U.S.C. § 2255 for relief from his conviction and sentence for crimes relating to possession of cocaine base and a firearm. He contends that the cocaine base and firearm were obtained by law enforcement officers in violation of his Fourth Amendment rights and that his appellate and trial counsel rendered ineffective assistance with regard to his Fourth Amendment claim. To obtain relief based on ineffective assistance of counsel, a defendant must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) but for his attorney's error, there is a reasonable probability the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). The defendant has not made this showing and his motion is therefore denied.

I. Background

  A. Facts Relating to Fourth Amendment Claim

The facts relating to the Fourth Amendment claim are as follows. On December 3, 2004, at around 2:00 in the afternoon,

New Haven Police Officer Thomas Herbert was using a laser gun to track speeders on Ella T. Grasso Boulevard, where the posted speed limit is 35 miles per hour.  He was doing this while standing on the side of the road near his cruiser.  Officer Brian Donnelly, also of the New Haven Police Department, was parked in another cruiser nearby.  The defendant passed them driving a Nissan sedan.  Herbert alerted Donnelly that he had clocked the defendant going 52 miles per hour.  The officers followed the defendant in their respective cruisers intending to stop him for a speeding violation.

Herbert activated his flashing lights and siren then pulled up behind the defendant at a red light.  Using a loudspeaker, he ordered the defendant to move to the right when the light turned green.  After the light changed, the defendant drove slowly to the right, in seeming compliance with the officer's order. Herbert saw the defendant lean forward and to the right in the direction of the glove compartment.  The defendant did this while still going about 10 miles per hour, which was unusual behavior in the eyes of Officer Herbert, who had been a patrol officer for nearly 15 years.

Officer Herbert used his air horn to signal the defendant to stop.  The defendant looked in his rear view mirror, made eye contact with Herbert, then suddenly accelerated and sped away. Herbert followed, notified the police dispatcher of the

2

defendant's flight, and described the defendant as wearing a black knit cap.

The defendant proceeded to weave through traffic at an unreasonable speed, swerving across the center line to pass cars on the left, then swerving back again to pass cars on the right. In the course of doing this, he ignored several red lights and stop signs. Because the defendant was driving so recklessly, clearly endangering himself and others, Officer Herbert decided to discontinue the chase. He turned off his lights and siren, and dropped back, but kept the defendant in view so he could keep the dispatcher informed of the defendant's route.

The defendant turned onto Mead Street. Officer Donnelly had just entered Mead Street from the opposite direction, anticipating that he might be able to intercept the defendant there, and was waiting in his parked cruiser when he saw the defendant's car approach. The defendant quickly turned into a driveway near a residence at 21 Mead Street, jumped out of the car and fled on foot, leaving the driver's door wide open. Donnelly saw the defendant run from the rear yard of 21 Mead Street in the direction of a vacant convalescent home on nearby Winthrop Street, jumping over fences as he ran. The defendant was being chased at that point by an off-duty police officer, Officer McKnight, who happened to be driving in the area listening to his police scanner when he heard about the

defendant's flight. Officer McKight found the defendant hiding at the Winthrop Street property, detained him and put him in handcuffs. Officer Herbert soon arrived in his cruiser. He had been in continuous radio contact with Donnelly, who had kept him informed of the defendant's actions. Herbert confirmed that the defendant was the person he had seen driving the Nissan, placed the defendant under arrest, and gave him Miranda warnings.

Herbert then conducted a pat down search of the defendant's pockets. The search revealed that the defendant was carrying more than $3,500 in cash. This extraordinarily large sum was bundled in increments of $100, which were stacked on top of each other. Drug dealers are known to bundle and stack large amounts of cash in this manner because it makes it easy to count the money and make change. The defendant also had a wallet, which contained more cash, but he had no car key in his possession.

Officer Herbert asked the defendant why he had taken off. The defendant said he was scared. Herbert then asked him why he had leaned forward and to the right while his car was still moving. The defendant responded that he was "going to open the glove box," then added "forget about it." Herbert wanted the defendant to explain what he meant by that but the defendant declined to say anything more. Herbert then drove the defendant around the block to 21 Mead Street.

On arriving there, Herbert encountered Officer Donnelly.

Donnelly had already searched the passenger compartment of the Nissan but had been unable to get into the glove compartment because it was locked. At or about this time, one of the officers closed the driver's door of the Nissan, which unexpectedly caused all four doors to lock automatically.

Sergeant Martin Tchakirides soon arrived and asked the defendant if he had the key to the Nissan. The defendant made a motion with his head indicating that the key could be found in the vicinity of a nearby garage. A subsequent search of the area produced a number of items the defendant had discarded as he fled, including the black hat he was seen wearing in the car, more cash, a set of house keys, and the key to the Nissan. Donnelly used the car key to open the glove compartment. The glove compartment contained cocaine base packaged for sale in 141 small bags as well as a loaded firearm.

B. Prior Proceedings

The defendant was charged with possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and unlawful possession of a firearm by a career criminal in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). Prior to trial, he moved to suppress the narcotics and firearm on the ground that the warrantless search of the Nissan violated the

5

Fourth Amendment.  The motion to suppress was denied after an evidentiary hearing.  Based on the evidence presented at the hearing, I concluded that the search was permissible under the automobile exception, which permits officers to search a car without a warrant if they have probable cause to believe the car is being used to transport contraband.  See United States v. Harris, No. 3:04-CR-360, 2005 WL 3021178, at *3 (D. Conn. Nov. 10, 2005)(citing United States v. Ross, 456 U.S. 798, 804-09 (1982)).  Because I determined that the officers had probable cause to believe the glove compartment contained contraband, and thus were entitled to search it under the automobile exception without first obtaining a warrant, I found it unnecessary to reach two other arguments made by the government in opposition to the motion to suppress: that the defendant relinquished any legitimate expectation of privacy he may have had in the car by abandoning it and that the police had a safekeeping duty to be sure the car did not contain drugs or weapons.  See Harris, 2005 WL 3021178, at *1 n.1.

The case against the defendant proceeded to trial.  In February 2006, a jury found him guilty on all three counts.  He was sentenced to 300 months' imprisonment followed by five years of supervised release.

On appeal, the defendant's counsel argued that the admission into evidence at trial of a recorded telephone conversation

between the defendant and an unidentified speaker violated the defendant's constitutional right of confrontation. Counsel also claimed that resentencing was warranted to give the defendant an opportunity to obtain the benefit of a then-recent amendment to the guideline applicable to offenses involving crack cocaine. The defendant himself attempted to file a brief challenging the denial of the motion to suppress but the brief was returned to him because he was represented by counsel. According to the defendant, he subsequently directed his counsel to file the brief but his counsel failed to comply.

In October 2008, the Court of Appeals affirmed the defendant's conviction and rejected his claim that he was entitled to resentencing under the amended guideline for crack cocaine offenses. However, the Court remanded the case for reconsideration of the sentence in light of its then-recent decision in United States v. Whitley, 529 F.3d 150 (2d Cir. 2008), which had construed the meaning of the "except" clause in 18 U.S.C. § 924(c)(1)(A) in a manner potentially beneficial to the defendant. See United States v. Harris, 294 Fed. Appx. 689 (2d Cir. 2008). Following issuance of the mandate in February 2009, the defendant moved for resentencing. The matter was held in abeyance at the request of the government and with the consent of the defendant pending Supreme Court action on the meaning of the "except" clause. The defendant's motion for resentencing was

7

recently denied in light of the Supreme Court's decision in Abbott v. United States, ___ U.S. ___, 131 S. Ct. 18 (2010), which abrogated Whitley.

Not long after issuance of the mandate in February 2009, the defendant filed the present motion. Relying on the Supreme Court's intervening decision in Arizona v. Gant, 566 U.S. ___, 129 S.Ct. 1710 (2009), he claimed his appellate counsel was ineffective in failing to challenge the ruling denying the motion to suppress. He subsequently amended his motion to include an ineffective assistance claim relating to the performance of his trial counsel. As amended, the defendant's motion asserts that his trial counsel was ineffective in failing to develop an argument in opposition to the government's position that he abandoned the vehicle and in failing to object to the suppression ruling insofar as it adopted the government's position on this point.

The government has submitted a memorandum in opposition to the amended motion. It contends that the defendant is not entitled to relief under Strickland because his arguments regarding the search lack merit and no prejudice flowed from the alleged errors of his counsel. Having carefully considered all the arguments presented by the parties, I conclude that the defendant's motion should be denied for the reasons set forth below.

II. Discussion

  A. Claim Relating To Appellate Counsel

A criminal defendant has the right to effective assistance of counsel on the direct appeal of his conviction. Evitts v. Lucey, 469 U.S. 387, 395-96 (1985). A claim of ineffective assistance of appellate counsel is governed by the two-prong test established in Strickland. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). To obtain relief, the defendant must show that his counsel erred in failing to raise a meritorious issue and that the error was prejudicial.

Appellate counsel do not have a duty to raise every colorable issue suggested by a client. See Jones v. Barnes, 463 U.S. 745, 754 (1983). "However, a [defendant] may establish constitutionally inadequate performance if he shows that his counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. To establish prejudice, a defendant must demonstrate a reasonable probability that the omitted claim would have been successful before the Court of Appeals. See id. at 534.

The defendant contends that the suppression ruling was erroneous, and his appellate counsel was ineffective in failing to challenge it, because (1) the search of the glove compartment exceeded the scope of a permissible vehicle search under Gant,

9

(2) the search lacked probable cause, and (3) the search was not justified by exigent circumstances.  The government responds that Gant is inapposite, the search was supported by probable cause, and no exigency was required to justify the search beyond the inherent mobility of the vehicle.  I agree.

In Gant, the Supreme Court held that a vehicle search incident to the arrest of a recent occupant is permissible "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S.Ct. at 1723-24.  Neither of these conditions to a valid search under Gant existed here.  But the suppression ruling was not based on the search-incident-to-arrest exception addressed in Gant.  It was based instead on the automobile exception applied in Ross, which permits a warrantless search of a car if officers have probable cause to believe the car is being used to transport contraband.  Under the automobile exception, "a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained."  Ross, 456 U.S. at 809.  The opinion in Gant makes it clear that the automobile exception remains intact.  See 129 S.Ct. at 1721 (observing that Ross continues to allow vehicle searches for evidence relevant to offenses other than the offense of arrest of the occupant and authorizes searches of any area in

a vehicle where contraband might be found).

With regard to probable cause, petitioner makes no serious attempt to show that probable cause was lacking, as the government correctly points out. Nevertheless, I have revisited the record to assess whether appellate counsel's failure to challenge the probable cause determination fell below an objective standard of reasonableness under the first prong of Strickland. Having done so, I agree with the government that the defendant's counsel was not ineffective in failing to contest the suppression ruling on appeal.

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). As explained in detail in the suppression ruling, the totality of the facts and circumstances known to the officers in this case, objectively viewed, provided probable cause to believe the defendant had contraband in the glove compartment. See Harris, 2005 WL 3021178, at *3. The defendant's possession of an extraordinarily large sum of cash, bundled and stacked in the unusual manner used by drug dealers, strongly suggested he was an experienced drug dealer who was actively dealing. The defendant's dangerous flight to avoid apprehension, his abandonment of the car, and his discarding of items that linked him to the car, considered in light of the large amount of cash

11

he was carrying, and the distinctive manner in which it was bundled and stacked, provided further reason to believe he was transporting contraband that day.  Because the passenger compartment of the Nissan had been searched and no contraband had been found, the officers focused their attention on the locked glove compartment.  Further cause to investigate the contents of the glove compartment was provided by the defendant's unusual behavior in leaning to his right and reaching in the direction of the glove compartment while he was still going 10 miles an hour.  Asked to explain this behavior, the defendant said he "was going to open the glove box," then added "forget about it."  The defendant's response provided further support for the search because it confirmed the officers' belief that he had reached for the glove compartment at a critical moment just before he took off.  Viewed in the context of the surrounding circumstances, the defendant's response also permitted the officers to conclude that he had reached for the glove compartment, not to open it as he claimed, but to check to be sure it was locked.  Additional cause to believe the glove compartment contained contraband was provided by the defendant's highly suspicious discarding of the key.  Considering all these facts and circumstances, and viewing them objectively, the search was supported by probable cause.

With regard to the issue of exigent circumstances, the defendant emphasizes that he was under arrest, in handcuffs and

seated in the back of a police car before the glove compartment was searched. These facts would be relevant to the applicability of the search-incident-to-arrest exception discussed in Gant. But they do not affect the validity of the search of the glove compartment under the automobile exception. In Ross itself, the trunk of a car was searched based on probable cause to believe it contained contraband after the sole occupant was arrested and handcuffed. See 456 U.S. at 801. Since Ross was decided, the Supreme Court has clearly stated that "the 'automobile exception' has no separate exigency requirement." Maryland v. Dyson, 527 U.S. 465, 466 (1999). See also Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)(same). In sustaining vehicle searches based on Ross, the Second Circuit has not required any exigency beyond a vehicle's inherent mobility. See United States v. Howard, 489 F.3d 484, 494 (2d Cir. 2007)(inherent mobility of vehicle suffices to constitute "ready mobility" for purposes of the automobile exception).[1]

Even assuming the defendant's counsel had a duty to seek appellate review of the suppression ruling, the defendant has not shown prejudice as required by the second prong of Strickland. In reviewing a district court's ruling on a motion to suppress, a

---

[1] The Connecticut Supreme Court similarly requires no showing of exigent circumstances to sustain a vehicle search based on probable cause. See State v. Smith, 257 Conn. 216, 228-229 (2001).

13

court of appeals reviews findings of fact for clear error and legal conclusions de novo. United States v. Dhinsa, 243 F.3d 635, 649 (2d Cir. 2001). The defendant has not identified any error in this Court's factual findings. Nor has he shown error in the Court's analysis of the facts under the automobile exception. Accordingly, he has failed to demonstrate a reasonable probability that a challenge to the suppression ruling would have been successful on appeal.

B. Claim Relating To Trial Counsel

The defendant's claim that his trial counsel was ineffective with regard to the issue of abandonment misconstrues the suppression ruling. The defendant's criticism of his counsel erroneously assumes the suppression ruling rested on a determination that he relinquished a legitimate expectation of privacy in the car, as the government argued in opposing the motion to suppress. The defendant's abandonment of the car was given weight in assessing the existence of probable cause for the search. But it was not relied on to support a ruling that he forfeited a legitimate expectation of privacy in the car.

Responding to the defendant's claim concerning his trial counsel's performance on the issue of abandonment, the government contends that the defendant cannot show prejudice because he did indeed forfeit any reasonable expectation of privacy he may have had in the car. After careful consideration of the record in

14

light of relevant case law, I think the government's argument is correct.

A defendant moving to suppress evidence must demonstrate that he had a subjective expectation of privacy in the location searched, one society is prepared to recognize as objectively reasonable. See Katz v. United States, 389 U.S. 347, 361 (1967). A person who voluntarily abandons property loses any reasonable expectation of privacy in the property. See California v. Hodari D., 499 U.S. 621, 624 (1991); United States v. Welbeck, 145 F.3d 493, 498 (2d Cir. 1998)  Abandonment is a question of the individual's apparent intent. United States v. Lee, 916 F.2d 814, 818 (2d Cir. 1990).  Police officers may be objectively justified in deeming a vehicle abandoned when the operator ditches the vehicle and flees on foot in an attempt to avoid apprehension.  See Wayne R. LaFave, Search and Seizure, § 2.5(a) at 649 (4th ed. 2004)(collecting cases).  See also United States v. D'Avanzo, 443 F.2d 1224, 1226 (2d Cir. 1971)(officer's climbing onto dump truck in order to view exposed interior did not invade defendants' legitimate expectation of privacy because defendants fled from vehicle when officer approached); United States v. Clarke, No. 92 Cr. 1138 (SS), 1993 WL 478374, at *2 (S.D.N.Y. Nov. 12, 1993)(defendant's flight from vehicle after brief questioning constituted voluntary abandonment).

The evidence presented at the suppression hearing shows that

the defendant manifested an intention to abandon the car he was driving during the high-speed chase. When the defendant unexpectedly encountered Officer Donnelly's cruiser on Mead Street, he made a quick turn, ditched the car and ran away leaving the driver's door wide open. While fleeing on foot, he discarded the key to the car. These actions strongly suggested that the defendant intended to leave the car behind and not return to it. See United States v. Lawrence, No. 06-83, 2007 WL 925893, at *3-4 (E.D.Pa. Mar. 16, 2007)(defendant relinquished any legitimate expectation of privacy in contents of glove compartment when he ditched vehicle after high-speed chase and fled on foot).[2]

In his amended motion, the defendant does not dispute the

---

[2] In the context of flight from police, courts readily conclude that a vehicle has been abandoned when the operator ditches the vehicle and flees on foot leaving the key in the ignition. See United States v. Kirlew, No. 07-5053, 2008 WL 4107221, at *2 (4th Cir. Sept. 5, 2008)(defendant abandoned his vehicle, and thus could not object to search of locked trunk, because he jumped out while car was still moving and ran away leaving engine running); United States v. Knaub, No. 95-30153, 1996 WL 146690, at *1 (9th Cir. April 1, 1996)(defendant lacked standing to challenge search of glove compartment because he fled vehicle leaving motor running and doors open); United States v. Grecni, Nos. 90-3483, 90-3571, 1991 WL 139703, at *3 (6th Cir. July 30, 1991)(defendant abandoned legitimate expectation of privacy when, in trying to elude police, he left car unlocked with keys in ignition); United States v. Libbett, No. 05-CR-6069L, 2006 WL 2620049, at *10 (W.D.N.Y. Sept. 13, 2006)(defendant abandoned car, and thus abandoned any reasonable expectation of privacy he may have had in the car, when he fled on foot leaving driver's door wide open and engine running). These cases do not suggest that the outcome should be different if the operator discards the key.

16

government's showing that he manifested an intention to abandon the car and thus lost any reasonable expectation of privacy he otherwise might have had in its contents. Instead, he faults his trial counsel for failing to demonstrate that the car was not abandoned within the meaning of motor vehicle laws. Those laws do not govern the inquiry here, as the government correctly points out. The question is not when cars are permitted to be towed under the motor vehicle code but whether the defendant retained a reasonable expectation of privacy in the car after he ditched it and discarded the key. I find that he did not.

III. Conclusion

For the forgoing reasons, the defendant's amended motion under § 2255 is hereby denied. Though I have concluded that the claims presented by the pro se defendant are unavailing, a certificate of appealability will issue under 28 U.S.C. § 2253(c)(2) limited to the following issues under Strickland: (1) whether the defendant's appellate counsel erred in failing to challenge the probable cause finding and, if so, (2) whether this error was prejudicial.

So ordered this 18th day of April 2011.

/s/
Robert N. Chatigny
United States District Judge